Eastern District of Kentucky
FILED
APR 1 7 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-200-JBC

GARY LEE MANNING,             PLAINTIFF

V.         **PROPOSED FINDINGS OF FACT
AND RECOMMENDATION**

JO ANNE B. BARNHART, Commissioner,
  Social Security Administration,           DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Gary Lee Manning, by counsel, brings this action against the Commissioner of the Social Security Administration, under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision that based on his application for Supplemental Security Income (SSI) benefits filed on August 23, 1995, he was not disabled.

This matter is before the court on cross-motions for summary judgment. [DE ##13, 14].

By Order of January 18, 2006, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation on dispositive matters.

## II. ADMINISTRATIVE PROCEEDINGS

Plaintiff alleged that he became disabled on August 9, 1995, at age 40, due to a heart attack and/or atherosclerotic heart disease. Plaintiff has past relevant work (PRW) experience as a lawn service worker, farm laborer, and laborer in a saw mill. (Tr. 149, 172). Plaintiff's SSI application was denied initially and on reconsideration, resulting in an ALJ hearing held on November 5, 1996. On December 23, 1996, ALJ William C. Vaughn found that plaintiff had not been disabled at any time through the date of that decision; therefore, he was not entitled to disability benefits. (Tr. 11-17). Subsequently, the Appeals Council denied plaintiff's request for review of the ALJ's decision.

Thereafter, plaintiff sought judicial review of the Commissioner's decision in an action styled *Gary Lee Manning v. Kenneth S. Apfel, Commissioner*, Lexington Civil Action No. 98-209. During the pendency of that action, the Commissioner moved to reverse the Commissioner's decision and remand that action to the Commissioner under Sentence Four of 42 U.S.C. § 405(g) for further proceedings. Specifically, the Commissioner requested that the ALJ be directed (1) to reevaluate the medical evidence and assess the findings of both the treating and consulting physicians, and (2) to consider the effect of plaintiff's nonexertional impairments, including his loss of manipulative ability, on the range of work available to him. (Tr. 182-85). By Order dated December 9, 1998, the district court granted defendant's motion to remand this matter to the Commissioner for further proceedings. (Tr. 181).

Subsequently, on January 22, 1999, the Appeals Council remanded this case to the Chief ALJ, with the following directions:

> Upon its receipt, the case will be assigned to an Administrative Law Judge pursuant to the order of the Appeals Council. The Administrative Law Judge will give the claimant the opportunity to update the record by submitting any available evidence from treating sources, including medical reports and functional assessments from treating physicians. In addition, the Administrative Law Judge will reevaluate the medical opinions of record and the claimant's subjective complaints and residual functional capacity and will cite the evidence which supports his conclusions as to the claimant's residual functional capacity the Administrative Law Judge will give full consideration to the opinion evidence in accordance with 20 CFR 404.1527(d) and 20 CFR 416.927(d) and Social Security Rulings 96-2p, 96-3p and 96-5p. A vocational expert will be asked to testify in order assist the Administrative Law Judge in determining what jobs, if any, the claimant might retain the residual functional capacity to perform in light of his consideration to all of the evidence of record including the claimant's loss of manipulative ability (Social Security Ruling 83-14). The Administrative Law Judge will provide the claimant an opportunity to appear at a hearing, develop the record pursuant to 20 C.F.R. §§ 416.912-416.918, and issue a new decision.

(Tr. 178-79).

Thereafter, on May 26, 1999, another ALJ hearing was conducted, and the ALJ obtained testimony from claimant from a Vocational Expert (VE). On June 8, 1999, Roger L. Reynolds found that plaintiff had not been disabled at any time through the date of that decision; therefore, he was not entitled to disability benefits. (Tr. 166-175). Subsequently, on November 14, 2003, the

2

Appeals Council denied plaintiff's request for review of the ALJ's decision, resulting in the filing of the present action for judicial review of the Commissioner's decision.

Summarizing the ALJ's findings, the ALJ found that (1) claimant has not engaged in substantial gainful activity since August 23, 1995, (2) claimant has severe atherosclerotic heart disease, status-post myocardial infarction in August 1995; amputation of the left thumb and index finger; hypertension and dyspnea; however, claimant does not have an impairment or a combination of impairments which meets or equals the requirements of the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4; (3) claimant's allegations concerning his limitations are credible only to the extent that he would be limited to a restricted range of light work activity; (4) claimant is unable to perform any of his past relevant work (PRW); (5) claimant has not acquired work skills which are transferable to other work within his residual functional capacity; (6) claimant has the residual functional capacity (RFC) to perform a restricted range of light work; (7) although claimant's nonexertional limitations do not permit him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, and based on vocational expert testimony, there is a significant number of jobs in the national economy that claimant can perform, such as production inspector, sampler and weight checker, and production inspector at the sedentary level of exertion; and (8) claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of the ALJ decision, June 8, 1999. (166-175).

### III. APPLICABLE LAW

The scope of judicial review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, see 42 U.S.C. § 405(g); Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means such evidence as a reasonable person might accept as adequate to support a conclusion. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th

3

Cir. 1990), (quoting <u>Kirk v. Secretary of Health and Human Services</u>, 667 F.2d 524, 535 (6th Cir. 1981, <u>cert.</u> <u>denied</u>, 461 U.S. 957 (1983).

In reviewing a case for substantial evidence, the court may not try the case <u>de</u> <u>novo</u>, resolve conflicts in evidence, or decide questions of credibility. <u>Garner v. Heckler</u>, 745 F.2d 383 (6th Cir. 1984).

## IV. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

In support of his motion for summary judgment, plaintiff asserts that (1) the ALJ gave insufficient weight to the opinion of his treating physician, Dr. Malec Mokraoui, (2) the ALJ's hypothetical questions to the Vocational Expert (VE) were inadequate, and (3) the ALJ erred in assessing plaintiff's pain, credibility, and subjective complaints. For these reasons, plaintiff submits that the ALJ's decision is not supported by substantial evidence, that the Commissioner's decision should be reversed, and that he should be awarded disability benefits. Alternatively, plaintiff requests that this case be remanded for further proceedings.

In response, the defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

### Discussion/Analysis

In considering this matter, the Magistrate Judge has reviewed, in addition to the memoranda filed in support of each party's motion for summary judgment, the hearing decisions, the medical evidence of record, and the transcripts of the ALJ hearings.

### A. Weight given to the treating physician's opinion

Plaintiff's treating physician is Dr. Malec Mokraoui, a cardiologist, who treated plaintiff subsequent to his myocardial infarction that occurred in August of 1995, which was treated with a successful rotational atherectomy. Dr. Mokraoui's office notes from plaintiff's follow-up visit on September 28, 1995, reflect the following comments by Dr. Mokraoui:

> **COMMENTS:** Mr. Manning is stable cardiacwise. He is asymptomatic except for some atypical chest pain that lasts only a few seconds. He inquires about returning to work. Since he is more than 6 wks. post MI and is stable, I allowed him to do so;

4

> however, I advised him to avoid heavy lifting with a weight limit of 40 lbs. for the time-being. He is to stay on the current medical regimen. He will be seen in followup in 3 mos. He was instructed, however, to contact the office should he have problems in the interim. At the next visit a lipid panel will be redone.

Tr. 120.

Subsequently, more than one year later, Dr. Mokraoui completed a physical capacities evaluation on October 24, 1996, indicating that plaintiff could only sit, stand, or walk no more than one hour in an eight-hour work day, that plaintiff could occasionally lift up to 20 pounds, but never lift over 20 pounds, that plaintiff could carry up to 10 pounds, that plaintiff cannot use his hands for repetitive action such as pushing and pulling or fine manipulating, that plaintiff cannot use his feet for repetitive movements as in operating foot controls, and that plaintiff can occasionally squat, but is unable to bend, crawl, climb, or reach above shoulder level. Dr. Mokraoui also noted that plaintiff's ability to drive automotive equipment was mildly restricted and that he should completely avoid unprotected heights, begin around moving machinery, exposure to marked changes in temperature and humidity, and exposure to fumes and gases. (Tr. 125-26).

In his decision, the ALJ summarized all of the medical evidence of record. In the following excerpt from his decision, the ALJ explains why he declined to adopt Dr. Mokraoui's restrictions noted in the October 1996 physical capacities evaluation:

> The undersigned is aware that Dr. Mokraoui concluded that claimant could stand, sit, and walk for only one hour in an eight-hour day (Exhibit 18). However, this conclusion is illogical and unsupported by his office notes or other medical evidence. Specifically, this conclusion suggests that claimant must assume a position other than sitting, standing, or walking for five hours of an eight-hour day. However, claimant testified that he walked three miles to the country store and three miles back home two or three times per week (Transcript page 158), with rest breaks every 30 to 35 minutes (Transcript at page 157). Dr. Mokraoui made no notation about having restricted claimant to a spine position for at least five hours per day. Dr. Mokraoui's medical opinion about claimant's ability to sit, stand, and walk, is not supported by his own findings and further is inconsistent with other substantial evidence. Accordingly, it is not accepted as controlling or even persuasive.

(Tr. 171).

Ordinarily, the opinion of a treating physician is entitled to considerable weight, so long as it is supported by objective medical evidence. See 20 C.F.R. § 404.1527(d)(3) (2003); *Jones v.*

5

*Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003). However, the ALJ may reject an opinion of a treating physician if substantial evidence is in the record that supports another conclusion. *See Warner v. Commissioner of Social Security*, 375 F.3d 387, 391 (6th Cir. 2004). Thus, the ALJ may reject the opinion of a treating physician in favor of one rendered by a consultative examiner when the treating physician's opinion conflicts with the weight of the medical evidence. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

In the present action, the ALJ clearly explained in great detail why he rejected the restrictions assigned to plaintiff in Dr. Mokraoui's physical capacities evaluation completed in October of 1996. These restrictions were unsupported by any clinical or laboratory tests and were inconsistent both with Dr. Mokraoui's prior restrictions (for example, in September of 1995, six weeks following his myocardial infarction and atherectomy, Dr. Mokraoui told plaintiff he could return to work, but restricted him to lifting no more than 40 pounds (Tr. 120)), and with other medical opinions of record (Dr. Martin Fritzhand opined from a December 21, 1995 consultative examination that plaintiff's shortness of breath caused "moderate impairments" in his ability to lift, sit, stand, and walk, but he expressed no opinion that plaintiff was totally disabled (see Exhibit 17)).

Under the regulations, both the "supportability" of a physician's opinion as well as the "consistency" of his opinion with the record as a whole are grounds for rejecting a treating physician's opinion. See 20 C.F.R. § 404.1527(d)(3)-(4) (2003). Consequently, the Magistrate Judge concludes that the ALJ committed no error by not giving controlling weight to the physical capacities evaluation completed by Dr. Mokraoui on October 24, 1996.

**B.     the ALJ's hypothetical questions to the Vocational Expert**

At the post-remand ALJ hearing held on May 26, 1999, the ALJ posed the following hypothetical questions to the VE:

> Q. Okay. I'm going to do a series of hypotheticals. Please assume a person of Mr. Manning's age, education and experience, with the capacity, let's say to perform at a light exertional level, but with no work with hands above the shoulders, with limited exposure to dust, gases, fumes, temperature extremes or excess humidity. Only occasional non-repetitive reaching, pushing and pulling with no use of the left, non-dominant hand for gripping, grasping, pinching, fingering, or turning. But it may

6

be used as a helper hand. Could he – let's add to that, no work at heights, and no climbing or balancing. Could he do any of his – actually based on the records, does any of his work actually constitute relevant work in terms of SGA, you know the income levels? My notes indicate, it looks like he was pretty full-time, but we have no real evidence that this was at –

A.   I didn't see any evidence in the file on that.

Q.   Well, anyway, could he do any of his past work with those limitations?

A.   Not with those limitations, no.

Q.   Okay. Any work that could be performed with those restrictions?

A.   Yes, there are jobs at the light exertional level, with no use of the left dominant hand, only as a helping hand.

Q.   Yeah, it's a non-dominant hand.

A.   I mean, I'm sorry, left's the non-dominant hand. Also it would be non-hazardous and low stress, requiring limited decision making, and it would fit all the restrictions and limitations that you'd mentioned. One such job wold be production inspectors, checkers, and examiners, samplers, and weighers. In Central Kentucky at the light exertional level, there are 368 jobs. And in the State of Kentucky at the light exertional level, there are 4,610 production inspectors, checkers, examiners, samplers, and weigher jobs. In the national economy there are 279,516 jobs at the light level.

Q.   All right. If we assume that he's limited to sedentary work, with the same postural, environmental, et cetera restrictions?

A.   Assuming at the sedentary work level, the same jobs in Central Kentucky, there are 47 jobs. In the State of Kentucky there are 592 jobs.

Q.   That's –

A.   That's at the sedentary level.

(Tr. 219-221).

The ALJ then asked the VE a hypothetical, incorporating all of the restrictions noted on Dr. Mokraoui's physical capacities evaluation form completed on October 24, 1996, as follows:

Q.   All right. If we assume that sitting, standing, and walking is limited to total altogether of three hours per day. Lifting and carrying limited to 20 pounds or less. Lifting limited to 20 pounds or less, carrying to 10 pounds or less, with no use, no operation of foot pedal controls. With no bending, crawling, climbing, reaching, and working at unprotected eights, around dangerous or moving machinery, temperature extremes, or dust, gases and fumes. Could he perform any of the jobs you've identified?

7

(Tr. 221).

The VE responded that those restrictions would preclude plaintiff from being able to perform the previous jobs the VE had identified that he could perform, unless the employer made special accommodations for plaintiff. (Tr. 222).

Upon review of the medical evidence and the ALJ's findings, the Magistrate Judge is unpersuaded by plaintiff's argument that the ALJ's hypothetical questions were inadequate. The ALJ first asked hypothetical questions incorporating restrictions supported by the medical evidence and plaintiff's testimony, to which the VE responded that while plaintiff could not return to his PRW, there were jobs at the light and sedentary levels that he could perform. The ALJ's hypotheticals simply track the medical evidence.[1]

Then, out of an abundance of caution, the ALJ asked the VE a hypothetical that included all of the restrictions noted on Dr. Mokraoui's physical capacities evaluation, even though there was no medical evidence of record to support those restrictions; in response, the VE stated that with those restrictions, there would be no jobs that plaintiff could perform unless special accommodations were made.

3. **the ALJ's findings concerning plaintiff's pain, credibility, and subjective complaints**

Plaintiff also contends that the ALJ erred in assessing his subjective complaints of pain and erred in finding his testimony concerning his pain and limitations not totally credible.

The basis for the ALJ's finding concerning plaintiff's credibility in regard to his pain and limitations is seen in the following excerpt from the ALJ's opinion:

> In arriving at the residual functional capacity described, the Administrative Law Judge has considered the claimant's subjective complaints of pain and other symptomatology in accordance with Social Security regulations (20 CFR Section 416.929(b)) and SSR 96-7p, but finds the claimant's allegations not credible to the extent he is precluded from performing the limited range of light work described. One month after the claimant's angioplasty, his treating physician opined that claimant could lift up to 40 pounds, and that he could return to work (Exhibit 18).

---

[1] No new medical evidence was submitted post-remand. The most recent medical evidence of record is dated July 17, 1997.

> Claimant sought infrequent follow-up care. Claimant's follow-up catheterization indicated that his stenosis had been reduced to only luminal irregularities. Mubashir Qazi, M.D., opined on July 10, 1997 that claimant was limited only from "any heavy exertion." In July 1997, claimant identified himself as a "farmer" (Exhibits AC-2 and 3). He worked temporary jobs driving a farm tractor in the summers of 1997 and 1998. Claimant testified that he walked three miles to the country store and three miles back home two or three times per week (Transcript page 158). In November 1996, he indicated that he could cook, wash the dishes, vacuum the floor, shop for groceries, and drive a car (Exhibit 21).

(Tr. 170-71).

In determining whether a claimant is disabled, the Commissioner considers all symptoms, including pain, and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a) (2005). When the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, as in this case, the Commissioner then evaluates the intensity and persistence of the symptoms to determine how those symptoms limit the claimant's capacity for work. See 20 C.F.R. § 404.1529(c)(1) (2005). In making this evaluation, the Commissioner considers the objective medical evidence as well as information from the claimant and from treating, examining, or other medical sources, as well as other factors, such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken and any resulting side-effects, and any other measures taken to alleviate the claimant's pain. See 20 C.F.R. §§ 404.1529(c)(2), (3) (2005).

In *Jones v. Commissioner of Social Security*, 336 F.3d 469 (6th Cir. 2003), the Sixth Circuit noted the critical distinction between an ALJ "disbelieving" a claimant and finding that the severity of the allegations was at odds with the medical evidence. Specifically, in *Jones*, the Sixth Circuit stated:

> . . . the ALJ can present a hypothetical to the vocational expert on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate. See Townsend v. Secretary of Health and Human Services, 762 F.2d 40, 44 (6th Cir. 1985); see also Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990) (holding that the ALJ had an adequate basis to discount Mr. Blacha's credibility, where his behavior and the medical evidence were inconsistent with his testimony.).

In this case, the ALJ found plaintiff's testimony concerning his pain and associated limitations only partially credible. The ALJ's reasoning is supported by not only plaintiff's testimony concerning his activities, but also by the medical evidence.

The Magistrate Judge concurs with the Commissioner's argument that plaintiff's daily activities do not support plaintiff's claim that he can not perform any work of any kind. See 20 C.F.R. § 404.1529(c)(3)(I) (2005); Blacha, supra at 231 (The ALJ may also properly consider evidence regarding a claimant's daily activities to assess claims of disabling symptoms).

It is well settled that in reviewing a case for substantial evidence, the court may not decide questions of credibility. Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984). The rationale underlying this rule of law is that it the ALJ, who has the opportunity to question and observe a claimant, is certainly in the best position to assess a claimant's credibility. Consequently, the Magistrate Judge is unpersuaded by plaintiff's argument that the ALJ erred in finding his testimony concerning his complaints of pain and impairments and how they impacted his ability to perform work activities only partially credible.

## V. CONCLUSION

Having reviewed the administrative record, including the medical evidence, the cross-motions for summary judgment, and the applicable law concerning judicial review of the Commissioner's decision, the Magistrate Judge concludes that the Commissioner's decision that plaintiff is not disabled is supported by substantial evidence.

Accordingly, **IT IS HEREBY RECOMMENDED** that plaintiff's motion for summary judgment [DE #13] be **DENIED**, that the defendant's motion for summary judgment [DE #14] be **GRANTED**, and that this action be **DISMISSED** and **STRICKEN** from the docket.

The Clerk of the Court shall forward a copy of the Magistrate Judge's Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court

of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 6(e).

This 17th day of April, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE